### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-02288

BARBARA ANN BURNEY,

      Plaintiff,

v.

BHFC FINANCIAL SERVICES INC.,

      Defendant.

### COMPLAINT

NOW comes BARBARA ANN BURNEY ("Plaintiff"), by and through her attorneys, Sulaiman Law Group, Ltd. ("Sulaiman"), complaining as to the conduct of BHFC FINANCIAL SERVICES INC. ("Defendant"), as follows:

#### NATURE OF THE ACTION

1.  Plaintiff brings this action for damages pursuant to the Telephone Consumer Protection Act ("TCPA") under 47 U.S.C. §227 *et seq.* for Defendant's unlawful practices.

#### JURISDICTION AND VENUE

2.  This action arises under and is brought pursuant to the TCPA.  Subject matter jurisdiction is conferred upon this Court by 47 U.S.C §227, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the District of Colorado and a substantial portion the events or omissions giving rise to the claims occurred within the District of Colorado.

**PARTIES**

4.   Plaintiff is a 57 year-old natural person residing atBHH, which is located within the District of Colorado.

5.   Plaintiff is a "person" as defined by 47 U.S.C. §153(39).

6.   Defendant provides automobile loans and financing to consumers located in "Arizona, California, Colorado, Nevada, [and] Utah."[1]  Defendant's registered agent is Richard R. Reed, Jr., located at 7017 North 56th Avenue, Glendale, Arizona.

7.   Defendant is a "person" as defined by 47 U.S.C. §153(39).

8.   Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all time relevant to the instant action.

**FACTS SUPPORTING CAUSES OF ACTION**

9.   Years ago, Plaintiff's daughter, Marchesha Humphrey ("Marchesha") purchased an automobile and financed it through Defendant.

10. In 2016, Marchesha gave birth and due to her inability to work during that time, Marchesha experienced financial hardship, thus falling behind on her monthly payments to Defendant.

11. In late 2016, Plaintiff began receiving calls to her cellular phone, (720) XXX-7421 from Defendant, asking to speak with Marchesha.

12. At all times relevant to the instant action, Plaintiff was the sole subscriber, owner, and operator of the cellular phone ending in 7421.  Plaintiff is and always has been financially responsible for the cellular phone and its services.

---

[1] http://www.bhfcfinancial.com/home.html

13. Defendant has mainly called Plaintiff's cellular phone using the phone number (602) 548-1615, but upon belief, it has used other numbers as well.

14. Upon information and belief, the above-referenced phone number ending in 1615 is regularly utilized by Defendant during its debt collection activity.

15. When Plaintiff answers calls from Defendant, she experiences a brief pause, lasting approximately four to five seconds in length, before a live representative begins to speak.

16. Upon speaking with one of Defendant's representatives, Plaintiff was informed that it was looking to speak with Marchesha to collect upon her past due monthly payment.

17. Plaintiff did not co-sign on the financing agreement and is unaware as to why Defendant was calling her.

18. Plaintiff informed Defendant on multiple occasions that the phone number it was calling did not belong to Marchesha, and to stop contacting her.

19. During some phone calls, Defendant's representatives have uttered disrespectful language toward Plaintiff, including the threat that it would continue to call Plaintiff as long as it had her contact information.

20. In spite of Plaintiff's demands, Defendant has persisted with its phone calls, and upon answering Defendant's more recent calls, Plaintiff experiences "dead air" and pure silence. This has been extremely frustrating for Plaintiff.

21. Despite Plaintiff's numerous demands, Defendant has continued to relentlessly call her cellular phone well into the summer of 2017.

22. Defendant has also called Plaintiff's cellular phone multiple times during the same day, with calls often ringing just minutes apart from one another.

23. For instance, Defendant called Plaintiff's cellular phone not less than 3 times on each of the following dates:

- 05/31/2017
- 06/13/2017
- 06/22/2017 (4 phone calls)
- 06/23/2017
- 06/27/2017
- 06/28/2017
- 06/29/2017

24. Even after notifying Defendant it was contacting the wrong person, in addition to her demands that it stop calling, Plaintiff has received not less than 46 phone calls from Defendant seeking to collect upon her daughter's debt.

25. Frustrated over Defendant's conduct, Plaintiff spoke with Sulaiman regarding her rights, resulting in expenses.

26. With the goal of specifically addressing Defendant's conduct, Plaintiff has expended approximately $68.00 to purchase and maintain an application subscription on her cellular phone to block the calls, resulting in pecuniary loss.

27. Plaintiff has been unfairly and unnecessarily harassed by Defendant's actions.

28. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, invasion of privacy, aggravation that accompanies collection telephone calls intended for a different individual, emotional distress, increased risk of personal injury resulting from the distraction caused by the never-ending calls, increased usage of her telephone services, loss of cellular phone capacity, diminished cellular phone functionality, decreased battery life on her cellular phone, and diminished space for data storage on her cellular phone.

### COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

29. Plaintiff repeats and realleges paragraphs 1 through 28 as though fully set forth herein.

30. The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(iii), prohibits calling persons on their cellular phone using an automatic telephone dialing system ("ATDS") without their consent. The TCPA, under 47 U.S.C. § 227(a)(1), defines an ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."

31. Defendant used an ATDS in connection with its communications directed towards Plaintiff's cellular phone. The noticeable pause which Plaintiff experiences during answered calls from Defendant is instructive that a predictive dialing system is being used to place calls to Plaintiff's cellular telephone. Additionally, the nature and frequency of Defendant's contacts points to the involvement of an ATDS.

32. "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

33. The Federal Communications Commission ("FCC") has determined that predictive dialing systems are a form of an ATDS. *Id.*

34. Upon information and belief, the predictive dialing system employed by Defendant transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

35. Defendant violated the TCPA by placing at least 46 phone calls to Plaintiff's cellular phone using an ATDS without her consent. Defendant was calling Plaintiff to collect upon her daughter's debt. As such, Plaintiff could not have given Defendant consent to contact her. Even

if Defendant had a legitimate business reason for initially contacting Plaintiff, any hypothetical

consent was explicitly revoked consent by her multiple demands to cease contact.

36. The calls placed by Defendant to Plaintiff were regarding collection activity and not for

emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

37.   Under the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B), Defendant is liable to Plaintiff

for at least $500.00 per call.  Moreover, Defendant's willful and knowing violations of the TCPA

should trigger this Honorable Court's ability to triple the damages to which Plaintiff  is otherwise

entitled to under 47 U.S.C. § 227(b)(3)(C).    Defendant's willful conduct is exemplified by it

calling Plaintiff over 46 times after becoming privy to the fact that she is not the debtor and after

being told to stop,

WHEREFORE, Plaintiff, BARBARA ANN BURNEY, respectfully requests that this

Honorable Court enter judgment in her favor as follows:

a.  Declaring that the practices complained of herein are unlawful and violate the
    aforementioned statutes and regulations;

b.  Awarding Plaintiff damages of at least $500.00 per phone call and treble damages
    pursuant to 47 U.S.C. §§ 227(b)(3)(B)&(C);

c.  Awarding Plaintiff costs and reasonable attorney fees; and

d.  Awarding any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: September 21, 2017                              Respectfully submitted,

s/ Nathan C. Volheim                                  s/Taxiarchis Hatzidimitriadis
*Nathan C. Volheim*                                   *Taxiarchis Hatzidimitriadis*
Sulaiman Law Group, Ltd.                              Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200                   2500 South Highland Ave., Suite 200
Lombard, Illinois 60148                               Lombard, Illinois 60148
(630) 568-3056 (phone)                                (630) 581-5858 (phone)
nvolheim@sulaimanlaw.com                              thatz@sulaimanlaw.com
Attorney for Plaintiff                                Attorney for Plaintiff